Allan G. MILLER and Betty G. Miller, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3156.

United States District Court, E. D. Michigan, N. D.

March 11, 1976.

Allan G. Miller, in pro. per.

Haskell H. Shelton, Jr., Asst. U. S. Atty., Bay City, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

On or about January 30, 1975, plaintiffs filed an amended complaint. Said complaint contains three separate counts and each count sets forth a separate and distinct theory upon which plaintiffs allege damage and taking of property by defendant, United States.

In Count One, plaintiffs allege that this action may be brought pursuant to Title 28, United States Code, Section 1331(a) for they seek monetary relief in excess of $10,000.00 for property damage caused by defendant United States. Said action arises out of and is founded upon a Treaty between the United States and Canada, commonly known as the "Boundary Water Treaty of 1909."

Plaintiffs allege in Count Two that the amount in controversy does not exceed $10,000.00 and all amounts over the subject matter jurisdiction of the Court pursuant to the provisions of the Tucker Act, Title 28, United States Code Section 1346(a)(2) are expressly waived. Also, plaintiffs seek monetary relief for the taking of real property by defendant without just compensation as allowed by the United States Constitution.

Finally, in Count Three, plaintiffs allege property damage due to the negligence of the United States Army Corps of Engineers. More specifically, it is alleged that an agent of the United States failed to operate certain water works with reasonable care and caution, thereby causing water conditions which injured the realty of plaintiffs. Plaintiffs assert that jurisdiction is founded upon the Federal Tort Claims Act, 28 U.S.C. 1346(b) in that the sovereign has waived its immunity to suits of this nature.

Although three separate legal theories are set out by plaintiffs, there exists only one set of factual allegations giving rise to plaintiffs' complaint. These allegations may be summarized as follows:

The sovereign United States and the Canadian government entered into a treaty whereby certain dams and control gates were erected to impound the waters of Lake Superior. Various diversion dams were also built in order to reverse the flow of two river streams thereby increasing the watershed of Lake Superior and the other Great Lakes. This diversion system was designed to divert water which naturally would flow directly into the Atlantic Ocean through the Great Lakes.

. In an effort to protect Lake Superior riparian interests from high water, said United States Corps of Engineers negligently dumped all excess water through said control gates upon the lower lakes of Huron and Michigan to the injury of plaintiffs, lower lake riparian owners. As the volume and velocity of water flowing past the plaintiffs' property increased, it disrupted the natural littoral drift and destroyed protective beach barriers causing permanent erosion damage to ensue on plaintiffs' property. The erosion caused said lands to become submerged thereby becoming property of the United States as lands beneath navigable waters.

On March 28, 1975, defendant filed a motion to dismiss which was responded to by plaintiffs on April 9, 1975. The parties have agreed to waive any oral arguments on the motion to dismiss. Based on the pleadings as amended and the legal memoranda submitted and being otherwise fully advised in the premises, the Court renders the following opinion.

■■ As to Count One, which arises out of the Boundary Water Treaty of 1909, the Court finds from a fair reading of said treaty that plaintiffs cannot be considered direct beneficiaries of the agreements made between the two contracting sovereigns. Furthermore, any channels of relief and/or procedures for processing a claim of injury that may be provided for the treaty provisions are

formulated in terms of administrative, not judicial jurisdiction.[1] Although plaintiffs have made some attempt by letter to gain relief from the International Joint Committee, the Court does not consider this an exhaustion of the administrative remedies.

Even if plaintiffs were considered beneficiaries under said Treaty as "inhabitants" of the United States with riparian interest along the Great Lakes to be protected, no where in said Treaty are plaintiffs given any greater right to bring an action against the sovereign than normally exists under the relevant laws specifying limited waivers of sovereign immunity. Further discussion of sovereign immunity as a bar to the present action will be set out in the Court's consideration of Count Three.

■ Plaintiffs have not alleged in Count One that said Treaty provides the requisite consent to bring an action for property damage against the sovereign. Without such allegations, the statement of claim in Count One fails to state a cause of action upon which relief may be granted. Having failed to state a claim upon which this Court may grant relief,

Count One of plaintiffs' amended complaint will be dismissed.

Plaintiffs allege in Count Two that defendant, acting through the Corps of Engineers, impounded waters of Lake Superior and other waters and diverted the same through control dam gates and locks into Lakes Michigan and Huron. This diverted water unnaturally increased the water level and velocity of the flow of the water in Lake Huron. These increases caused permanent erosion to plaintiffs' land along the shores of Lake Huron. The eroded land became submerged beneath the navigable waters of Lake Huron, thereby becoming the property of the United States. Plaintiffs seek just compensation for this taking by the defendant pursuant to the provisions of the Tucker Act, Title 28, United States Code, Section 1346(a)(2).

■ Based on the above allegations, the Court finds that Count Two is fatally defective for it fails to name as party defendant, the sovereign state of Michigan. The State of Michigan must be considered an indispensable party to this litigation for it is the title holder of all lands lying beneath navigable waters

---

1. Reference in the treaty to relief or determination of the rights of a citizen of one of the countries and their sovereign is stated in Article 10 of the Treaty as follows:

"Any questions or matters of difference arising between the High Contracting Parties involving the rights, obligations, or interests of the United States or of the Dominion of Canada either in relation to each other or to their respective inhabitants, may be referred for decision to the International Joint Commission by the consent of the two Parties, it being understood that on the part of the United States any such action will be by and with the advice and consent of the Senate, and on the part of His Majesty's Government with the consent of the Governor General in Council. In each case so referred, the said Commission is authorized to examine into and report upon the facts and circumstances of the particular questions and matters referred, together with such conclusions and recommendations as may be appropriate, subject however, to any restrictions or exceptions which may be imposed with respect thereto by the terms of the reference.

A majority of the said Commission shall have power to render a decision or finding upon any of the questions or matters so referred.

If the said Commission is equally divided or otherwise unable to render a decision or finding as to any questions or matters so referred, it shall be the duty of the Commissioners to make a joint report to both Governments, or separate reports to their respective Governments, showing the different conclusions arrived at with regard to the matters or questions so referred, which questions or matters shall thereupon be referred for decision by the High Contracting Parties to an umpire chosen in accordance with the procedure prescribed in the fourth, fifth, and sixth paragraphs of Article XLV of The Hauge Convention for the pacific settlement of international disputes, dated October 18, 1907. Such umpire shall have power to render a final decision with respect to those matters and questions on which the Commission failed to agree."

within its boundaries. *United States v. Louisiana*, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960); *United States v. Florida*, 363 U.S. 121, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960); *Obrecht v. National Gypsum Co.*, 361 Mich. 399, 407, 105 N.W.2d 143 (1960).

For the above stated reason, Count Two will be dismissed.

Count Three is brought on a theory of negligence of defendant's agents and jurisdiction is alleged founded upon the Federal Tort Claims Act, Title 28, United States Code, Section 1346(b).

Basically, plaintiffs allege that the United States Army Corps of Engineers impounded waters of Lake Superior and released the same into the lower Great Lakes. However, said agent of defendant failed to determine the proper amount of water that could be safely released. Therefore, without exercising reasonable care, said agent released excessive amounts of water that resulted in doing damage to plaintiffs' property. Plaintiffs now seek compensation from the United States for the negligent operation of the control works.

The Tort Claims Act was designed to render the United States liable for its torts essentially in the same manner and to the same extent as an individual, in like circumstances, under the law of the place where the wrong occurred. But liability under the Act is not carte blanche. The United States is liable, as an individual, only in the manner and to the extent which it has consented. It does not, ipso facto, become liable merely because its acts, if committed by a private person, would have contravened some statute, rule or regulation rendering such person tortiously liable. Indeed, the consensual provisions of the Act are made expressly inapplicable to any claim " . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 60 Stat. 845, § 421(a).

Although plaintiffs urge that the Federal Government has consented to this lawsuit and is liable for negligent acts at the "operational level", it is the opinion of this Court that the above stated factual allegations fall clearly within the area of the exempted "discretionary function." This opinion is based squarely on the fact that the alleged damage was caused by a release of water which was entirely discretionary within the meaning of Section 421(a), supra. *United States v. Gregory*, 300 F.2d 11, 12–13 (CA 10, 1962); 28 U.S.C. § 2680; *Spillway Marina Inc. v. United States*, 445 F.2d 876, 877 (CA 10, 1971); *Morris v. Tennessee Valley Authority*, 345 F.Supp. 321 (D.C.Ala.1972). See also *Dalehite v. United States*, 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427, 1444.

Therefore, plaintiffs' third count fails.

For all the above reasons, the defendant's motion to dismiss is hereby granted and the complaint of the plaintiff is hereby dismissed.

IT IS SO ORDERED.