**CHICAGO AND ILLINOIS MIDLAND RAILWAY COMPANY, Plaintiff,**

v.

**John O. MARSH, et al., Defendants.**

**No. 81–1028.**

United States District Court, C.D. Illinois.

Jan. 9, 1984.

---

Hugh Graham, Springfield, Ill., for plaintiff.

Janet L. Jannusch, Asst. U.S. Atty., Peoria, Ill., for Marsh, Corps of Eng., Gribble, Moore, Miller & Zerbonia.

Raymond Rose, Peoria, Ill., for B. Knachstedt.

John Mulgrew, Peoria, Ill., for Horn, W. Fuelberth & Hall.

R. Michael Henderson, Peoria, Ill., for Hall & Oberle.

Thomas M. Barger, III, Bloomington, Ill., for Garman, R. Friederich & Robert Talbott.

George D. Browning, Peoria, Ill., for Hellemann.

## ORDER

MIHM, District Judge.

In 1973, a massive flood partially destroyed sections of the levees and inundated much adjacent farm land in the vicinity of the Mackinaw River. A group of individual farmers who owned the land adjacent to the river approached the United States Army Corps of Engineers to obtain relief following the 1973 flood. Feasibility studies by the Corps developed several possible alternatives, including channelization of the river. The Corps states, however, that it decided to limit its response to a contract for restoration of the destroyed levees, a contention which the Plaintiffs dispute. William Hellemann was the successful bidder on the Corps project. In the meantime, Hellemann was also in contact with individual farmers and with officials of Tazewell County, seeking to form separate contracts for channelization of the river. Shortly after the Corps contract was approved, Hellemann entered into contracts with the group of individual farmers and with Tazewell County for channelization on this section of the river. The Tazewell contract was limited to channelizing one segment in the vicinity of a highway bridge which was vulnerable to flooding.

On or about March 7, 1979, Bridge No. 171, owned by Chicago and Illinois Midland Railway Company ("Midland") was washed out and on June 3, 1980, Bridge No. 168 was washed out. Plaintiff Midland Railway Company brought a four count complaint under the Rivers and Harbors Act ("Act"), alleging violations of 33 U.S.C. § 401, § 403, § 407, and § 565. Midland alleges that the damming and channelization of the Mackinaw River caused the river waters to flow with increased force and velocity. Midland claims that it was forced to spend substantial sums of money to repair the damage to the two bridges and that additional amounts of money were lost because train traffic had to be halted and diverted over other railroad lines. The complaint named Corps officials, individual farmers, and William Hellemann and Roecker Bros., both contractors, as Defendants. In addition to its claim for money damages to the two damaged bridges, which Midland alleges were caused by the actions of the Defendants in 1973 to 1975, the Plaintiff seeks injunctive relief to restore the levee elevations to original configurations with reference to the 1973 to 1975 work of Hellemann on property owned by Defendant Horn, and the 1981 Corps related work on the property south and east of Bridge No. 171.

After the initial complaint was filed, there began a real "buck passing" contest. First, the Corps officials cross-claimed against the individual landowners (except for B. Knachstedt), Hellemann, and Roecker Bros. under Federal Rule of Civil Procedure 13(g). The Corps officials claim that Hellemann and Roecker Bros. agreed to obtain all the necessary permits required for the work on the river and also agreed to indemnify the Corps officials from liability arising out of their own negligence. The Corps officials also claim that the individual landowners agreed to hold the Corps harmless from all liability. Second, Roecker Bros. filed a cross claim for indemnification from the Corps officials and the individual landowners as joint tortfeasors. Third, remnants of the group of individual landowners filed a third party complaint against three other Tazewell County landowners who allegedly participated in the damming and channelization of the river. These landowners are Goldsmith, Look, and Clayton. Finally, Mabel Oberle, a landowner Defendant named in the original complaint, brought a third party complaint against eight other Tazewell County landowners who allegedly participated in the damming and channelization. On July 29, 1982, this Court entered an order dismissing Roecker Bros. from this case on the grounds that Roecker Bros. signed a repair contract merely as an accommodation party and not as a joint venturer. Summary judgment was also later granted on cross

claims naming Roecker Bros. as a cross defendant.

Defendants John O. Marsh, Jr., Secretary of the Department of the Army of the United States, the United States Corps of Engineers, Lt. General William C. Gribble, General Robert Moore, Colonel James M. Miller, and Angelo Zerbonia, hereinafter referred to as "federal defendants", have moved for an order granting them summary judgment. Defendant William Hellemann has also moved for summary judgment on the complaint and on the first cross-claim filed by the federal defendants against him.

■ The federal defendants assert that there are three grounds upon which summary judgment should be granted in their favor. First, the federal defendants claim that the District Court lacks subject matter jurisdiction in that the Plaintiff could only be pursuing its claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and the Corps action in this case in repairing the levees comes within the discretionary function exception of 28 U.S.C. § 2680(a). Second, the federal defendants argue that the Rivers and Harbors Act does not provide for a private right of action, citing *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). Finally, the federal defendants allege that the United States is exempt from liability for all flood damages under 33 U.S.C. § 702c which provides that "no liability of any kind shall attach to or rest upon the United States for any damage from or by flood or flood waters at any place".

Defendant Hellemann, in his motion for summary judgment, adopts and incorporates the portion of the memorandum filed by the federal defendants in support of their motion for summary judgment upon the grounds that the Rivers and Harbors Act does not authorize a private right of action. Second, Defendant Hellemann sought summary judgment based on the argument that he, as an independent contractor, owed no duty to third persons for damages resulting from the performance by an independent contractor in a work-

manlike manner of plans, specifications, and instructions which the contractor has contracted to follow. At a hearing before this Court on October 19, 1983, this Court denied Hellemann's motion for summary judgment based on this independent contractor argument holding that genuine disputes as to material facts existed.

RIVERS AND HARBORS ACT

In *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), the United States Supreme Court held that both the language of the Rivers and Harbors Act and its legislative history give no evidence that Congress intended to create a private cause of action under the Act. In that case, private parties sought injunctive relief to prohibit the construction and operation of water diversion facilities under the authority of 33 U.S.C. § 403. The Court held that the plaintiffs had no cause of action.

Plaintiff Midland argues that the federal defendants are collaterally estopped from raising the issue that the Plaintiff has no cause of action under the Rivers and Harbors Act. The Plaintiff claims that the same issues relating to these same Defendants, and relating to the same time frame and same style of claim were all considered by this Court in earlier companion litigation. In that case, *People of the State of Illinois ex rel. William J. Scott v. Hoffman, et al.*, judgments adverse to the federal defendants were entered and the federal defendants did not appeal. In an order entered on February 20, 1979 by this Court, it was found that:

"7. The Mackinaw River has been used in historical times for commerce and trade and is therefore a navigable river of the United States within the meaning of the term 'navigable' as used in all United States Statutes governing the use of navigable waters, including, but not limited to, 33 U.S.C. §§ 401 and 403.

\* \* \* \* \* \*

10. Without admitting which of the Defendants actually directed the channelization and damming by Hellemann and

Roecker Bros., Inc., federal defendants do acknowledge that the filling and channelization violated the following laws:

(a) the building of the earth plugs in the navigable stream and the filling of a navigable stream and the altering of the course of the navigable stream—all of which was done at this location on the Mackinaw River—was performed without authorization from the Secretary of the Army in violation of Title 33 U.S.C. section 403."

Plaintiff alleges that the federal defendants in the earlier litigation had the opportunity to raise any defense reasonably within the limits of the law, and that they were well advised of the nature of the claims, the defenses they could assert, the effect of the judgment in that case and the consequences to reasonably flow from their decision as to how to conclude that earlier litigation. The Plaintiff asserts that collateral estoppel precludes the applicability of *California v. Sierra Club* to the present claim. Plaintiff points to *Federated Department Store v. Moitie*, 452 U.S. 394, 395, 101 S.Ct. 2424, 2426, 69 L.Ed.2d 103 (1981), in which the Supreme Court stated that the res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong, or rested on a legal principle subsequently overruled in another case. 452 U.S. at 398, 101 S.Ct. at 2427.

In *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court held that the doctrine of equitable estoppel could be used affirmatively to stop a defendant, once having lost an issue, from raising a defense. The Supreme Court in that case ruled that trial courts have broad discretion to determine when offensive collateral estoppel should be applied. If a party received a "full and fair" opportunity to litigate its claim in the former action, collateral estoppel may be applied except where a plaintiff could easily have joined in an earlier action or where the application of the principle would be unfair to the defendant. Collateral estop-

pel may be unfair to a defendant if a defendant in the first action is sued for small or nominal damages and has little incentive to defend vigorously, particularly if future suits are not foreseeable, or where a second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

In *Parklane Hosiery*, the Supreme Court denied the defendant the opportunity to relitigate the issues in a subsequent legal action brought against it by a new party where those same issues of fact had been adjudicated adversely to it in a prior equitable action. Thus, a party may be precluded from relitigating issues that were or could have been raised in a prior proceeding.

The federal defendants correctly point out that *Parklane Hosiery* presented the question of "whether a party who has had *issues of fact* adjudicated adversely to it in an equitable action may be collaterally estopped from relitigating the same issues ... in a subsequent legal action brought against it by a new party". 439 U.S. at 324, 99 S.Ct. at 648 (emphasis added). In this case, the federal defendants are not attempting to relitigate the factual issues but rather a legal issue. The federal defendants also correctly assert that res judicata is inapplicable in the present case in that res judicata will preclude parties or their privies from relitigating issues that were decided or could have been decided in a previous action. Since Plaintiff herein was not in any way a party to the previous lawsuit, Plaintiff was not in privity to any of the parties and collateral estoppel, not res judicata, is the only doctrine in question in this case.

In *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), the Supreme Court stated that the determination of the appropriate application of collateral estoppel necessitated three inquiries:

"first, whether the issues presented by this litigation are in substance the same as those resolved against the United States in (previous litigation); second, whether controlling facts or legal princi-

ples have changed significantly since the state-court judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion." 440 U.S. at 155, 99 S.Ct. at 974.

The federal defendants state that the Plaintiff cannot satisfy the second and third factors stated in *Montana* due to the intervening Supreme Court decision in *California v. Sierra Club.* Lower court decisions prior to that case concerning the right to a private cause of action under the Rivers and Harbors Act had been conflicting. To hold that the federal defendants are now estopped from raising the *California v. Sierra Club* decision, the federal defendants assert, would be grossly unfair.

The federal defendants also argue that collateral estoppel should not be extended to consent judgments. In support of this proposition, they cite *United States v. International Building Company,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) and *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). In both of these cases, the Supreme Court found that prior decisions did not bar subsequent actions under the doctrine of res judicata.

In *International Building,* the Supreme Court held that prior decisions of the Tax Court were not res judicata of the fact that the proper basis for depreciation of the respondent's leasehold was $860,000. The prior decisions of the Tax Court had been entered pursuant to stipulations filed by the respondent and the Commissioner. The Tax Court held no hearing, no stipulation of facts were entered into, no briefs were filed or argument had. The Supreme Court concluded that the decisions entered by the Tax Court were only a pro forma acceptance by that court of an agreement between the parties to settle their controversy for undisclosed reasons. The Supreme Court noted that it was unable to determine whether the agreement of the parties was based on the merits or on some collateral consideration. The Court concluded that:

"(a) judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court but unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties." 345 U.S. at 506, 73 S.Ct. at 809.

*Lawlor v. National Screen Corporation* involved actions to recover damages for alleged violations of federal antitrust laws. The first action, brought in 1942, was settled in 1943 prior to any trial. The basis of the settlement was an agreement between the defendant and the plaintiff pursuant to which the suit was dismissed "with prejudice" by court order. No findings of fact or law were made. In 1949, the plaintiffs brought a similar action against the same defendants who moved to dismiss the action on the ground that the 1943 judgment was res judicata. The Supreme Court noted that no question of collateral estoppel by the former judgment was involved because the case was never tried and there was not, therefore, any finding of fact which would preclude the parties to that litigation from questioning the finding thereafter. 349 U.S. at 326, 75 S.Ct. at 867. Under the doctrine of res judicata, the Supreme Court considered whether the plaintiffs in the present suit were suing upon the same cause of action as that upon which they had previously sued and lost. The District Court had concluded that the 1942 and 1949 suits were based on the same cause of action. The Supreme Court noted, however, that the fact that both suits involved essentially the same course of wrongful conduct was not decisive in that such a course of conduct may frequently give rise to more than a single cause of action. 349 U.S. at 327–28, 75 S.Ct. at 868–69. The Court held that while the 1943 judgment precluded recovery of claims arising prior to its entry, it could not be given the effect of extinguishing claims which did not even then exist and could not have been sued upon in the previous case. The Court refused to hold that the subsequent action was barred under the doctrine

of res judicata where the conduct complained of in the subsequent action occurred after the 1943 judgment and there were new antitrust violations alleged which were not present in the former action.

Plaintiff Midland Railway Company seeks to distinguish *International Building* and *Lawlor* from the case at bar. In *International Building,* the Plaintiff points out that the Tax Court had very little involvement with the substance of the case and that the earlier decision of the Tax Court was only a "pro forma" acceptance by that court of an agreement between the parties. The Plaintiff asserts that that situation is distinguishable from the case at bar in that in the previous litigation of *Illinois v. Hoffman,* the judgment order of this Court directed to the federal defendants states in its opening paragraph:

> "This cause coming before the Court after full review of the pleadings and after extensive pretrial conferences and discovery and the Court being fully advised in the premises...."

The *Hoffman* Order provides that "both plaintiff and federal defendants have stipulated and agreed to the entry of this judgment order", and makes twelve specific findings and contains six directives.

In *Lawlor,* similar to *International Building,* the suit was dismissed with prejudice pursuant to the settlement agreement of the parties with no findings of fact or law being made. The Plaintiff refers to the United States Supreme Court's comment that "(n)o question of collateral estoppel by the former judgment is involved because the case was never tried and there was not, therefore, such finding of fact which will preclude the parties to that litigation from questioning the finding thereafter". The Plaintiff submits that this is not the situation in the instant litigation, and also argues that the *Lawlor* case is factually distinguishable from the case at bar.

■ The Supreme Court in *Parklane Hosiery Company v. Shore* stated that:

> "The preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied (footnote omitted). The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552.

Various factors in the case at bar have led this court to conclude that the doctrine of collateral estoppel should not preclude the Defendants' claim that no private cause of action exists under the Rivers and Harbors Act.

The case at bar is factually distinguishable from *Lawlor* and *International Building.* Those cases involved little consideration by the courts of the facts involved or the law governing the cases. In *Illinois v. Hoffman,* however, on which the Plaintiff bases its claim for collateral estoppel, the Court entered specific findings and directives after an extensive review of the facts and legal issues involved in the case. The principles of *Lawlor* and *International Building* do not, therefore, provide a rationale for denying collateral estoppel in the present case; other reasons exist, however, for a denial of the doctrine's application.

In none of the cases relied on by the Plaintiff was collateral estoppel or res judicata used to create a cause of action. Rather, it was clear that a cause of action and jurisdiction of the court already existed. Here, the Plaintiff is in essence contending that a settlement agreement of the parties to *Illinois v. Hoffman* confers on this court subject matter jurisdiction over a Rivers and Harbors Act claim. The rule is, however, that:

> "(t)he parties cannot confer on a federal court jurisdiction that has not been vest-

ed in the court by the Constitution and Congress. The parties cannot waive lack of jurisdiction, whether by express consent, or by conduct, nor yet even by estoppel." (footnotes omitted). C. Wright, Handbook on the Law of Federal Courts 17, § 7 (1976).

More specifically, in *California v. Sierra Club*, the Supreme Court refused to consider the State of California's request that the court reach the merits of the case regardless of its disposition of the private-cause-of-action issue. The court stated that:

> "Our ruling that there is no private cause of action permitting respondents to commence this action disposes of the cases: we cannot consider the merits of a claim which Congress has not authorized respondents to raise." 451 U.S. at 298, 101 S.Ct. at 1781.

Thus, even if the Order of this Court in *Illinois v. Hoffman* can be read as an admission of the federal defendants that a private cause of action exists under the Rivers and Harbors Act, this Court lacks jurisdiction over the merits in the present action. Congress has not authorized this Court to consider the claim, and subject matter jurisdiction cannot be foisted on the court by collateral estoppel or by any agreement of the parties. Wright, supra, at 17.

An application of collateral estoppel in the present case also fails to meet the three requirements stated by the Supreme Court in *Montana v. United States*, 440 U.S. at 155, 99 S.Ct. at 974. First, the issues presented by this litigation are not the same as those resolved against the federal defendants in prior litigation. The present action seeks relief for damages to the Plaintiff's bridges occurring in March, 1979, and in June, 1980, and seeks injunctive relief for Hellemann's work on the Horn property in 1973–1975 and Corps related work in 1981. The prior lawsuit was brought to restore the Mackinaw River to its previous state. The flooding which caused damage to the Plaintiff's bridges had not as yet occurred. The present lawsuit thus seeks relief for events occurring after the February 20, 1979 judgment order in *Illinois v. Hoffman*. As the Supreme Court in *Lawlor* stated:

> "(w)hile the (former) judgment precludes recovery of claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." 349 U.S. at 328, 75 S.Ct. at 868.

The second inquiry made by the Supreme Court in *Montana v. United States* was "whether controlling facts or legal principles have changed significantly since the (prior) judgment...." 440 U.S. at 155, 99 S.Ct. at 974. The federal government in *Montana* relied on *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). *Sunnen* involved the tax status of certain income generated by a license agreement during a particular tax period. The Supreme Court declined to give collateral estoppel effect to the prior judgment because there had been a significant "change in the legal climate". 333 U.S. at 606, 68 S.Ct. at 723. The Court in *Montana v. United States* stated that:

> "(u)nderlying the *Sunnen* decision was a concern that modifications in 'controlling legal principles,' (*Sunnen* at 599 [68 S.Ct. at 720]), could render a previous determination inconsistent with prevailing doctrine...." 440 U.S. at 161, 99 S.Ct. at 977.

The *Montana* court quoted the *Sunnen* court's statement that:

> "(collateral estoppel) is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers." 440 U.S. at 161, 99 S.Ct. at 977, quoting *Sunnen*, 333 U.S. at 599, 68 S.Ct. at 720 (citations omitted).

The *Montana* court concluded on the facts of that case that since the factual and legal context had not been materially altered since the previous litigation, normal rules of preclusion should operate. 440 U.S. at 162, 99 S.Ct. at 978.

The Plaintiffs rely on *Federated Department Store, Inc. v. Moitie* for the proposition that:

"the res judicata consequences of a final, unappealed judgment on the merits (are not) altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case (citations omitted). As this Court explained in *Baltimore SS Co. v. Phillips*, 274 U.S. 316, 325 [47 S.Ct. 600, 604, 71 L.Ed. 1069] (1927), an 'erroneous conclusion' reached by the court in the first suit does not deprive the defendants in the second action 'of their right to rely upon the plea of res judicata.... A judgment merely voidable because based on an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause (of action)'." 452 U.S. at 398, 101 S.Ct. at 2428.

This Court does not view *Moitie* as controlling in the present litigation. The issue in *Moitie* concerned the application of the doctrine of res judicata which precludes parties or their privies from relitigating issues that were decided or could have been decided in a previous action. Res judicata is inapplicable here where the Plaintiff was not a party to the previous lawsuit nor was the Plaintiff in privity to any of the parties. The application of collateral estoppel was at issue in *Montana v. United States*. There the Supreme Court stated that that issue required an inquiry into whether controlling facts or legal principles had changed significantly since the previous judgment. Here the Plaintiff, who was not involved in the first lawsuit, seeks to offensively estop the federal defendants from raising an intervening change in the law.

At the time of the 1979 order in *Illinois v. Hoffman*, it was unclear whether the Rivers and Harbors Act created a private cause of action. This Court had previously ruled, on a motion by the federal defendants for summary judgment, that although the reported precedents were not consistent, the persuasive precedent supported the right of a person injured or aggrieved by a violation of the Act by a federal agency to prosecute a suit for redress of that injury or grievance. 425 F.Supp. 71, 75 (1977). The intervening Supreme Court decision in *California v. Sierra Club* definitively laid to rest the idea that the Rivers and Harbors Act created a private cause of action. This certainly constitutes a significant change in legal principles, precluding the application of collateral estoppel under the rationale of *Montana v. United States*, 440 U.S. at 155, 99 S.Ct. at 974. Furthermore, application of collateral estoppel would be grossly unfair to the Defendants, a consideration which precludes the application of collateral estoppel under *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651.

The third inquiry made by the Supreme Court in *Montana v. United States* in determining the application of collateral estoppel was whether other special circumstances warrant an exception to the normal rules of preclusion. 440 U.S. at 155, 99 S.Ct. at 974. With respect to Defendant Hellemann, such a circumstance exists. The Stipulation between Plaintiff and Non-Federal Defendants, pursuant to which the Court entered its 1979 Judgment Order Directed to Non-Federal Defendants in *Illinois v. Hoffman*, was not signed by Hellemann nor by any representative of Hellemann. The Stipulation, in addition, stated in paragraph 10 that no responsibility or liability on the part of any particular non-federal defendant for the blocking and channelization of the Mackinaw River was admitted.

Based on the foregoing, collateral estoppel is not applicable in the present litigation based on previous judgment orders entered in *Illinois v. Hoffman*. Furthermore, the Plaintiff has no private cause of action under the Rivers and Harbors Act. *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

JURISDICTION UNDER THE FEDERAL TORT CLAIMS ACT

The Plaintiff's complaint names as Defendants the Secretary of the Army, the United States Corps of Engineers and vari-

ous other federal officials acting in their official capacities. As such, the federal defendants argue, the suit is in effect a suit against the United States itself, and thus, jurisdiction must be based on some federal statute specifically waiving the sovereign immunity of the United States. Plaintiff's complaint bases subject matter jurisdiction on §§ 1331, 1337, 1346, and 1361 of Title 28 United States Code. The United States, however, has not waived sovereign immunity under the provisions of 28 U.S.C. §§ 1331, 1337, or 1361. *Eric v. Secretary of United States Department of Housing*, 464 F.Supp. 44 (D.Alaska 1978); *Foreman v. General Motors*, 473 F.Supp. 166 (E.D.Mich.1979); *Hill v. United States*, 571 F.2d 1098 (9th Cir.1978). The federal defendants conclude that the only basis upon which the United States has conceivably consented to suit in this case is under the Tucker Act, 28 U.S.C. § 1346(a)(2), or the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

■ Under the Tucker Act, a district court has jurisdiction only to the extent of $10,000. Claims in excess of $10,000 against the United States must be litigated in the United States Claims Court. Since the Plaintiff in this case has requested damages in the amount of $200,000 and has failed to allege any contract or act of Congress which would authorize an award of money damages against the United States, this Court concludes that the Plaintiff is proceeding under the Federal Tort Claims Act.

The Federal Tort Claims Act allows monetary recovery against the United States Government for damages caused by the negligent or wrongful acts of federal employees while acting in the scope of their employment. 28 U.S.C. § 1346(b). The Act does not subject the United States to injunctive or equitable relief, *Midwest Growers Co-op Corp. v. Kirkemo*, 533 F.2d 455, 465 (9th Cir.1976), as the Plaintiff is seeking in this suit. One of the most important exceptions to the Federal Tort Claims Act is the discretionary function exception, 28 U.S.C. § 2680(a). That exception bars recovery on:

"(a)ny claim based upon an act or omission of an employee of the government, exercising due care in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused."

Thus, the federal defendants argue, when a government official acts within the constraints of the discretionary function exception, no tort suit can be maintained since the government has not consented to be sued. The doctrine of sovereign immunity applies and jurisdiction is absent. See *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Morris v. United States*, 521 F.2d 872 (9th Cir.1975).

The federal defendants cite several cases in which the discretionary function exception has been applied to public works projects involving flood control and irrigation. See, e.g., *Konekny v. United States*, 388 F.2d 59 (8th Cir.1967) (decision of when to release and store water and flood control reservoir discretionary); *United States v. Gregory*, 300 F.2d 11 (10th Cir.1962) (removal of accumulated silt from irrigation canals under the control of the United States protected by discretionary function exception); *Miller v. United States*, 410 F.Supp. 425 (E.D.Mich.1976), reversed in part on other grounds, 583 F.2d 857 (6th Cir.1978) (alleged negligence of United States in operation of water works within discretionary function exception of Federal Tort Claims Act); *Danner v. United States*, 114 F.Supp. 477 (D.C.Mo.1953) (construction and maintenance by Corps of Engineers of fill on Missouri River method of implementing flood control authorized by Congress and was therefore a discretionary function within the meaning of § 2680(a)).

The federal defendants allege that their involvement in the subject matter of this lawsuit was limited to the performance of

emergency levee repair and set-back on the Mackinaw River, a contention which the Plaintiff disputes. The work, the federal defendants state, was performed under the authority of 33 U.S.C. § 701n which provides for an emergency fund for flood control work as may be necessary "in the discretion of the Chief of Engineers for the adequate functioning of the work for flood control...." The federal defendants conclude that the decision on the part of the Corps as to whether or not to undertake the work authorized by § 701n was discretionary in nature and therefore was within the exception of § 2860(a). They conclude that subject matter is lacking and this suit should be dismissed.

The Plaintiffs in response state that their claim is not limited to the Federal Tort Claims Act but that there exists a claim under that Act and under the Rivers and Harbors Act. They submit, however, that even if there is no claim under the Rivers and Harbors Act, the Federal Tort Claims Act does apply. The Plaintiffs do not contest the federal defendants' argument that no basis for this suit exists under 28 U.S.C. §§ 1331, 1337, 1361, or under the Tucker Act, 28 U.S.C. § 1346(a)(2). The Plaintiff does disagree, however, with the federal defendants' contention that the Corps work in this case falls within the discretionary function exception of 28 U.S.C. § 2680(a).

The discretionary function exception, according to the Plaintiff, intends to exempt large scale policy decisions such as those by the Secretary of the Interior or by his chief designee from liability for policy decisions made. The Plaintiff contends, however, that the Act does not mean to exclude liability in every instance where a federal government employee performs any judgmental act. Plaintiff cites the case of *United States v. Hunsucker*, 314 F.2d 98 (9th Cir.1962), in which a distinction is drawn between decisions made on the "planning level", to which the discretionary function exception applies, and decisions made on the "operational level", to which the exception does not apply. The Plaintiff contends that the essence of the *Hunsucker* decision is that once a decision has been made to implement a project, it must be done in a reasonably careful manner. They allege that the work of the Corps on the Mackinaw River was negligent and that because disputes as to material facts exist, summary judgment would be inappropriate.

In attempting to limit the discretionary function exception to decisions by the Secretary of the Interior or his chief designee, the Plaintiff attempts to read the exclusion too narrowly. In *United States v. Gregory*, for instance, the Court held that the discretionary function exception applied to a claim for damages resulting to Plaintiff's property from the drainage of his ponds into recently cleared irrigation ditches under the control of the United States. 300 F.2d at 13. The Court held that the judgment by the Bureau of Reclamation was entirely discretionary, and did not result from "operational level" acts such as piling of dirt on appellee's land, the destruction of access roads and a bridge, and the killing of one of appellee's steers. *Id.* In *Danner v. United States*, the Court held that the discretionary function exception applied in the situation where the Corps of Engineers had constructed a bridge and dam "approach fill" on a river. The collapse of the fill caused a flooding of plaintiff's property. The *Danner* court quoted the statement of the Supreme Court in *Dalehite:*

"(i)t is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." 346 U.S. at 35–36, 73 S.Ct. at 967–968.

In *Spillway Marina, Inc. v. United States*, 445 F.2d 876 (10th Cir.1971), an action brought by a marina owner for damage to the marina from a drawdown of the water level of a flood control reservoir, the Court of Appeals discussed the distinction between negligence at the operational level and the exercise of the discretionary function. The court noted that the discretionary function in that case did not stop in the decision to construct the flood control reservoir. Rather, it continued "because the storage and release of water was directly related to the attainment of the objectives sought by the reservoir construction. Decisions of when to release and when to store required the use of discretion." 445 F.2d at 878. The court concluded that in the facts of *Spillway Marina*, the manner of exercise related at most to a possible abuse of discretion and the performance of the excluded function and that § 2680(a) specifically provides that the exclusion applies "whether or not the discretion involved be abused."

Similarly, in *Miller v. United States*, the court held that a release of water in the operation of water works by the United States Corps of Engineers fell within the area of the exempted discretionary function because the release of water was entirely discretionary. 410 F.Supp. 425 (E.D. Mich.1976), reversed in part on other grounds 583 F.2d 857 (6th Cir.1978).

■ In the case at bar, the federal defendants allege that their involvement in the subject matter of this suit was limited to the performance of emergency levee repair and set-back on the Mackinaw River. The Plaintiffs dispute this contention, claiming that the Corps was also involved in channelization of the River. Regardless of this factual dispute, however, the work authorized and undertaken by the Corps was discretionary in nature whether the Corps simply participated in emergency levee repair and set-back, or whether its actions also involved damming and channelization of the River. The Corps work involved determinations by "administrators in establishing plans, specifications or schedules of operation", *Dalehite*, 346 U.S. at 35–36, 73 S.Ct. at 967–968, and fits within the statement in *Dalehite* that "where there is room for policy judgment and decision there is discretion". *Id.* at 36, 73 S.Ct. at 968. Thus, the Corp's action falls within the discretionary function exception of 28 U.S.C. § 2680(a), and the Court lacks jurisdiction of the Plaintiff's claim under the Federal Tort Claims Act.

## LIABILITY OF THE UNITED STATES FOR FLOOD DAMAGE

The United States contends that it is exempt from liability for all flood damages under 33 U.S.C. § 702c which provides that "no liability of any kind shall attach to or rest upon the United States for any damage from or by flood or flood waters at any place". This immunity, the federal defendants allege, applies to flood or flood waters which result from work performed by the government as a part of, or in conjunction with, an authorized flood control project. *McClaskey v. United States*, 386 F.2d 807 (9th Cir.1967). Cases have held that the government is immune under § 702c whether or not it was negligent in the construction or operation of flood control projects, and whether or not the flood was caused by natural causes alone, by natural causes in conjunction with government negligence, or solely as a result of government negligence. *Stover v. United States*, 332 F.2d 204 (9th Cir.1964), cert. denied 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335; *Ledford v. United States*, 429 F.Supp. 204 (W.D.Okl.1977); *Sanborn v. United States*, 453 F.Supp. 651 (E.D.Cal.1977); *Aetna Insurance Company v. United States*, 628 F.2d 1201 (9th Cir.1980). In *National Manufacturing Company v. United States*, the Eighth Circuit held that § 702c was not repealed by the Federal Tort Claims Act since it is not within the statutes enumerated in the Federal Tort Claims Act as having been repealed, and since repeals by implication are not favored. 210 F.2d 263, 274 (8th Cir.1954).

The federal defendants contend that the Corps of Engineers performed the emer-

gency levee repair and set-back on the River as part of an authorized flood control project under the authority of 33 U.S.C. § 701n. The government suggests that § 702c therefore provides immunity for any flood damage to the Plaintiff's railroad bridges and embankments. In response, the Plaintiffs suggest that the same reasons which estop the Corps of Engineers from asserting that no private cause of action exists under the Rivers and Harbors Act prevents the Corps from asserting exemption from liability under 33 U.S.C. § 702c. The Plaintiffs state that the federal defendants had the opportunity to make § 702c a defense in the earlier judgment and because they did not do so, § 702c is not a live defense in this companion litigation.

■ The previous litigation in *Illinois v. Hoffman* concerned restoration of the River to its original state. Flooding had not yet occurred and thus the federal defendants had no opportunity to raise § 702 as a defense in the first lawsuit. For this reason, and for the reasons stated above for the denial of the application of collateral estoppel to the Rivers and Harbors Act claim, collateral estoppel is not available to preclude the assertion of a § 702c defense in the present litigation. Section 702c of Title 33, United States Code, thus precludes the federal defendants' liability in the case at bar.

CONCLUSION

Because the United States is immune from liability for flood damages under 33 U.S.C. § 702c, because the work performed by the Corps of Engineers in this case comes within the discretionary function exception of the Federal Tort Claims Act, and because no private cause of action exists under the Rivers and Harbors Act, no basis exists for federal court jurisdiction.[1] The federal defendants are entitled to summary

judgment on these grounds. Defendant Hellemann is entitled to summary judgment on the basis that no private cause of action exists under the Rivers and Harbors Act. All claims against the original defendants are dismissed. All crossclaims and third party complaints are dismissed since these claims were based on any liability to the Plaintiff.

IT IS SO ORDERED.

---

1. In its brief in opposition to Defendant Hellemann's motion for summary judgment, Plaintiff states that even if no private right of action exists under the Rivers and Harbors Act "because [the Mackinaw] river is navigable, matters relating to money damages or injunctive relief regarding it are properly in this federal court as a part of the commerce clause of the United States Constitution". Plaintiff submits no authority in support of this proposition. This Court finds that no claim exists under the Commerce Clause.