**UNITED STATES ex relator, Gladys KEEFE, Appellant,**

v.

**John Foster DULLES, Secretary of State, et al., Appellees.**

No. 12107.

United States Court of Appeals District of Columbia Circuit.

Argued June 16, 1954.

Decided Sept. 16, 1954.

Petition for Rehearing Denied October 15, 1954.

Writ of Certiorari Denied Feb. 28, 1955.

See 75 S.Ct. 440.

Bazelon, Circuit Judge, dissented in part.

Mr. John H. Coffman, Washington, D. C., for appellant.

Mr. Oliver Gasch, Principal Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll and Edward O. Fennell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before WILBUR K. MILLER, BAZELON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Richard Thomas Keefe, a private in the United States Army stationed in France, and another American soldier, pleaded guilty October 30, 1953, in a French civil court to a charge that in off-duty hours they had beaten a cab driver and stolen his taxicab. Each is now serving in a French civil prison the five-year sentence imposed upon him by the French court.

December 16, 1953, Keefe's wife filed in his behalf in the United States District Court for the District of Columbia a petition for a writ of habeas corpus. For obvious reasons, Mrs. Keefe did not ask that the writ be directed to the foreign jailer. Instead she named as respondents the Secretary of State, the Secretary of Defense and the Secretary of the Army, alleging those officials had conspired to deprive her husband of his liberty. She charged that, acting through their agents, servants or employees, the three Secretaries "actually have deprived the said Richard Thomas Keefe of his liberty, in a 'Maison de Correction' at Orleans, France."

Apparently she meant only to charge the Secretaries with indirectly causing her husband's present incarceration by not preventing the French from taking, trying, convicting and confining him, for she also alleged that her husband's imprisonment "was and is brought about by an alleged trial of him by a French court on October 31, 1953, for the offense of 'Robbery', i.e., taking a civilian taxicab by force, and for which he was sentenced to confinement for a term of five (5) years." This was in effect an allegation of what is undoubtedly the fact: that Keefe is imprisoned by a French civilian jailer pursuant to the French court's sentence.

Upon the filing of this petition, the District Court entered an order to show cause. The respondents' motion to dismiss the petition and discharge the show cause order was granted as follows:

"This cause having come on for consideration on a petition for a writ of habeas corpus, an order to show cause, respondents' motion to dismiss the petition and discharge the order to show cause, and argument of counsel, and it appearing to the Court that the petitioner is not in the custody of the respondents, and that this Court is without jurisdiction to issue a writ of habeas

corpus, it is this 13 day of January, 1954,

"Ordered, that the respondents' motion to dismiss the petition and discharge the order to show cause, be, and the same hereby is, granted."

This appeal is prosecuted from the foregoing order.

The question is, therefore, whether the District Court erred in refusing to issue a writ of habeas corpus pursuant to the petition we have described. That depends on whether Keefe is held in actual or constructive custody by the respondents named in the petition, or by any other person or persons subject to the jurisdiction of the District Court. If not, it was properly denied, for reasons presently to be stated.

The petition shows on its face that Keefe is not in the custody of the respondents. It also shows, because it alleges he is detained by French civil authorities, that there is no one within the jurisdiction of the court who is responsible for his detention and who would be an appropriate respondent. It was therefore necessary to dismiss the petition insofar as it sought a writ of habeas corpus, as a court will not issue that writ unless the person who has custody of the petitioner is within reach of its process. Cf. Ex parte Mitsuye Endo, 1944, 323 U.S. 283, 306, 65 S.Ct. 208, 89 L.Ed. 243.

Although the petition was insufficient to require or justify habeas corpus, we think it should be examined as one seeking a mandatory order requiring the Secretary of State to obtain Keefe's release through diplomatic negotiations with France. Mrs. Keefe's allegations in that respect, though sketchy, are prob-ably sufficient to show she was seeking that relief.[1] Moreover, her brief seems to be directed to the proposition that the Secretary of State can effectuate the prisoner's release, that it is his legal duty to do so, and that the court can and should require him to perform that duty. We understand her argument to be substantially this:

(a) In its reservation to its ratification of the Status of Armed Forces Treaty,[2] the Senate of the United States "specifically provided that, when the constitutional rights of an American serviceman was [sic] violated overseas, the chief diplomatic officer should intercede";

(b) Keefe's constitutional rights have been and are being violated by the French in that he was compelled to be a witness against himself, might have been cruelly and unusually punished by deportation to a penal colony, and is now in involuntary servitude;

(c) It is therefore the legal duty of the Secretary of State to intercede and obtain Keefe's release, which he can now do "by representations to the Government of France."

We discuss appellant's premises (a) and (b) and her conclusion (c) in that order:

(1) The Senate's reservation in its ratification of the Treaty does not provide that, when an American soldier's constitutional rights are violated in a foreign criminal trial, the Secretary of State should or shall intercede in his behalf through diplomatic negotiations. Its provision is that an American observer shall attend the trial and report to the commanding officer any violation of Article VII, § 9, of the Treaty,[3] whereup-

---

1. The petition alleged that the Secretary of State can, "by representations to the Government of France," obtain Keefe's release. And the prayer was not only for a writ of habeas corpus, but also "For such other and further relief as to the Court may seem just and proper."

2. "Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces," 99 Cong.Rec. 8724 (1953).

3. Section 9 of Article VII, 99 Cong.Rec. 8725, 8726 (1953), is as follows:

"9. Whenever a member of a force or civilian component or a dependent is prosecuted under the jurisdiction of a receiving State he shall be entitled—

"(a) to a prompt and speedy trial;

"(b) to be informed, in advance of trial, of the specific charge or charges made against him;

on that officer "shall then request the Department of State to take appropriate action to protect the rights of the accused."[4]

(2) Mrs. Keefe's allegations made on information and belief that her husband's constitutional rights were violated were not supported by the record, which sufficiently shows that the contrary is true. A representative of our Staff Judge Advocate was present at the trial and reported no unconstitutional irregularities.[5] The commanding officer did not think it necessary to request the State Department to take action to protect Keefe's rights.

(3) Since appellant's premises (a) and (b) fail, her conclusion (c) must fall. The Secretary of State was not requested by the commanding officer of the area to make the representations to France which Mrs. Keefe would have him make. Even had the request been made, whether to grant it would have been within the Secretary's discretion. He was not under a legal duty to attempt

"(c) to be confronted with the witnesses against him;

"(d) to have compulsory process for obtaining witnesses in his favour, if they are within the jurisdiction of the receiving State;

"(e) to have legal representation of his own choice for his defense or to have free or assisted legal representation under the conditions prevailing for the time being in the receiving State;

"(f) if he considers it necessary, to have the services of a competent interpreter; and

"(g) to communicate with a representative of the Government of the sending State and, when the rules of the court permit, to have such a representative present at his trial."

4. The resolution of ratification, as amended by the committee reservation [99 Cong. Rec. 8780 (1953)], is in pertinent part as follows:

"In giving its advice and consent to ratification, it is the sense of the Senate that:

"1. The criminal jurisdiction provisions of Article VII do not constitute a precedent for future agreements;

"2. Where a person subject to the military jurisdiction of the United States is to be tried by the authorities of a receiving state, under the treaty the commanding officer of the Armed Forces of the United States in such state shall examine the laws of such state with particular reference to the procedural safeguards contained in the Constitution of the United States;

"3. If, in the opinion of such commanding officer, under all the circumstances of the case, there is danger that the accused will not be protected because of the absence or denial of constitutional rights he would enjoy in the United States, the commanding officer shall request the authorities of the receiving state to waive jurisdiction in accordance with the provisions of paragraph 3(c) of article VII

(which requires the receiving state to give 'sympathetic consideration' to such request), and if such authorities refuse to waive jurisdiction, the commanding officer shall request the Department of State to press such request through diplomatic channels and notification shall be given by the executive branch to the Armed Services Committees of the Senate and House of Representatives;

"4. A representative of the United States to be appointed by the Chief of Diplomatic Mission with the advice of the senior United States military representative in the receiving state will attend the trial of any such person by the authorities of a receiving state under the agreement, and any failure to comply with the provisions of paragraph 9 of article VII of the agreement shall be reported to the commanding officer of the Armed Forces of the United States in such state who shall then request the Department of State to take appropriate action to protect the rights of the accused, and notification shall be given by the executive branch to the Armed Services Committees of the Senate and House of Representatives."

5. The letter, dated December 1, 1953, which Mrs. Keefe received from the Department of the Army and which she submitted to the court, contains the following:

" * * * According to information furnished this office by the Staff Judge Advocate of Headquarters, U. S. Army Europe, Communications Zone, the men did not desire to appeal their sentences.

"Both men had a competent French attorney who is reported to have brought all mitigating factors possible into the argument of the case. A representative of the Staff Judge Advocate was present throughout the trial and he reported that the accused were given all the fundamental safeguards they would enjoy in a United States court."

through diplomatic processes to obtain Keefe's release. Quite to the contrary, the commencement of diplomatic negotiations with a foreign power is completely in the discretion of the President and the head of the Department of State, who is his political agent. The Executive is not subject to judicial control or direction in such matters. Marbury v. Madison, 1803, 1 Cranch 137, 164, 5 U.S. 137, 164, 2 L.Ed. 60; cf. United States v. Curtis-Wright Export Corp., 1936, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255. Accordingly we hold the petition was properly dismissed, even though it be regarded as seeking affirmative injunctive relief against the Secretary of State.

This action might also be regarded as one seeking an order in the nature of mandamus requiring the Secretary of Defense to reinstate the monthly allotment to the wife and children which was cancelled after Keefe's conviction.[6] Mrs. Keefe alleged the Secretary had "without any justification or excuse" terminated the monthly payment which she "is informed and therefore believes, is an allotment to which she is entitled under congressional enactment." The petition cited no statute requiring a soldier's pay and allowances to be continued in circumstances such as those shown here. We know of no such enactment.

The petition was insufficient as a claim for reinstatement of the allotment: it falls short of being the "short and plain statement of the claim showing that the pleader is entitled to relief" required by Rule 8(a)(2) of the Federal Rules of Civil Procedure.* This rule requires the pleader to disclose adequate information as the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it.[7]

Affirmed.

BAZELON, Circuit Judge (concurring in part and dissenting in part).

I concur in the court's opinion except for that part which purports to deny a claim for reinstatement of the monthly allotments for the serviceman's family. Although the petition recites that these allotments have been terminated, there is no specific prayer for their reinstatement; nor was the matter dealt with in the briefs and arguments. In these circumstances, I think there is no basis even to consider such a claim, let alone to make a final disposition denying it on the ground that "the petition was insufficient as a claim for reinstatement of the allotment."

6. In the letter dated December 1, 1953, the Department of the Army advised Mrs. Keefe as follows:

"While your husband is in prison, he will be considered in an 'off-duty' status and therefore ineligible for pay and allowances. He will, however, have an opportunity to earn spending money while in prison.

"Although you will no longer continue to get your allotment since your husband is not being paid, he is still a member of the Armed Forces and, for such time as he is, his dependants are entitled to medical care and other benefits."

* 28 U.S.C.A.

7. See page 9 of "Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Court," prepared by the Advisory Committee on Rules for Civil Procedure, May, 1954.