Floyd SMITH, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 34163.

United States District Court, E. D. Michigan, S. D.

Aug. 20, 1971.

Clarice Jobes, Philo, Maki, Ravitz, Jobes, Cockrel & Robb, Detroit, Mich., for plaintiff.

Neil R. Peterson, Atty., U. S. Dept. of Justice, Washington, D. C., Fred M. Mester, Asst. U. S. Atty., Detroit, Mich., for defendant.

MEMORANDUM OPINION

FACTS

FEIKENS, District Judge.

Plaintiff, Floyd Smith, brings this action against the Government under the Federal Tort Claims Act. The accident complained of occurred during the Detroit riots of the summer of 1967. The Michigan National Guard had been federalized pursuant to Executive Order dated July 24, 1967, providing that the Secretary of Defense was authorized:

1. To take all appropriate steps to restore law and order in Detroit;

2. To use such of the armed forces as he might deem necessary; and

3. To federalize any or all of the units of the Army National Guard of the State of Michigan.

On July 25, 1967, during which time a curfew was in effect, plaintiff was in-

jured while walking home from a friend's house between 12:00 and 1:00 a. m. Plaintiff alleges three shots were fired, one of which struck him in the left leg. He further alleges that these shots came from men who were on federalized National Guard duty. Plaintiff alleges negligence on the part of the United States in that:

1. Prior to exercising its discretion to federalize the National Guard, the United States negligently failed to assess the quality of the guard to carry out riot control;

2. After this exercise of its discretion, the United States failed to formulate rules which would prevent the negligent discharge of firearms;

3. That the United States was negligent in not properly supervising its soldiers and that defendant was negligent in its issuance of vague and ambiguous orders to its soldiers regarding persons similarly situated as to plaintiff; and

4. The guardsmen negligently shot plaintiff.

The Government has filed a motion to dismiss. A dismissal must be granted.

The Federal Tort Claims Act provides in part:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

There are several exceptions to this general section creating liability on the part of the Government. The first exception relevant is that for any claim

"based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused" 28 U.S.C. § 2680(a)

no liability will be predicated.

■ The first three allegations of negligence and probably the fourth come within the above exception.

The President is commander-in-chief of " * * * the militia of the several States, when called into actual service of the United States under U.S.Const. Art. II, § 2. There is a duty on the part of the federal government to 'protect each [State] against Invasion * * * and domestic Violence.' " United States Constitution, Article IV, Section 4.

■ Congress has enacted legislation under this clause (and others) to implement this provision. 10 U.S.C. §§ 331–334. The decision that conditions exist requiring federalization of the guard is immune from judicial examination. This is a decision involving political judgment into which the courts should not inquire. Luther v. Borden, 7 How. 1 (48 U.S. 1) 12 L.Ed. 581. In Martin v. Mott, 12 Wheat. 19, 6 L.Ed. 537 (1827), a person who had been court-martialed for failure to obey a call up of the militia challenged the authority of the orders. The court stated per Justice Story: "[T]he authority to decide whether the exigency has arisen belongs exclusively to the President and that his decision is conclusive upon all persons." 25 U.S. 12 Wheat. at 30.

Plaintiff does not argue that factors existed requiring the use of the National Guard, but rather that such factors as quality and the capability of the guard to carry out its assigned task should have been assessed in the decision to use the guard, and further that in the exercise of this duty of restoring order in Detroit, better rules and orders should have been formulated.

Plaintiff therefore alleges negligence at a very high level. Under 10 U.S.C. § 3033, a committee of officers from the Army General Staff and the Army National Guard is charged with responsibility to pass on policies and rules affecting training of the National Guard.

The leading case in the area of discretionary function is Dalehite v. United

States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The case arose out of an explosion of ammonia nitrate fertilizer which caused extensive damage with potential liability of millions of dollars. The plaintiff in that case argued that there was negligence in the planning of the program and in manufacture and packing of the fertilizer. The Supreme Court ruled that these activities fell within the exception created by Section 2680(a) in that:

> "The acts found to have been negligent were * * * performed under direction of a plan developed at a high level under a direct delegation of plan-making authority from the apex of the Executive Department." 346 U.S. at 39–40, 73 S.Ct. at 970.

The negligence alleged in the instant case involves the Secretary of Defense and high-ranking officers of the National Guard and the Army. The means and method of restoring order in a city faced with anarchy and breakdown of civilian authority are delegated to the Executive Branch of the Government, not the judiciary. That some may say with the wisdom of hindsight that the National Guard was not sufficiently prepared to cope with the delicate task of quelling a riot motivated by racial tensions does not create a cause of action. It is more appropriately a plea addressed to the legislative and executive departments of Government.

The court is not unaware that an exception for discretionary functions of Government may create hardships on innocent persons. However, not all those injured, economically or physically, by the action of the Government can always be made whole for their injury. One commentator analyzed the problem thus:

> "One aspect of the problem involves intricate issues about proper distribution of governmental powers. Much of what is done by officers and employees of government must remain beyond the range of judicial inquiry, as it always has been. For instance, if the Secretary of State miscalculates in getting too close to the brink of war, clearly

we do not want the courts in damage suits to determine whether the Secretary was negligent in dealing with the problem of international relations." K. C. Davis, Administrative Law, § 25.11.

The present case falls squarely in the above class.

The result here is not novel. A similar situation arose out of the use of United States Marshals in connection with the enrollment of James Meredith at the University of Mississippi. Plaintiffs there alleged negligence in the use of tear gas to control the crowd, and that:

> "The United States, Katzenbach, and McShane lacked skill and ability in the formulation of plans or control of their personnel and should have known that the Deputy Marshals * * * were immature, nervous, or unseasoned in the use of gas projectiles and the controlling of large groups of persons." United States v. Faneca, 332 F.2d 872, 873 (5th Cir. 1964), cert. denied, 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268.

With reference to the negligence of the Attorney General and the Chief Marshal, the court, after quoting *Dalehite, supra,* stated:

> "Just as the tasks of carrying out the orders of this Court and of handling an unruly mob are among the responsibilities of the Chief Marshal and the Deputy Attorney General, so is the choice of means for performing these tasks peculiarly within their discretion. The decision to choose the *modus operandi* and to decide the time in which to put it into action was specifically delegated to McShane and Katzenbach." 332 F.2d 872, 874–875 (5th Cir. 1964). See also, Nichols v. United States, D.C., 236 F.Supp. 260 (1964).

As the Supreme Court stated in *Dalehite, supra,* the discretionary function exception

> " * * * includes more than the initiation of programs and activities. It also includes determinations made by

executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government * * * cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion." *Dalehite, supra,* 346 U.S. at 35–36, 73 S.Ct. at 968.

## II

■ Passing now to the fourth ground in plaintiff's complaint, there is a further reason why plaintiff's action does not state a claim. The Tort Claims Act creates a further exception to liability for any claim "arising out of assault, battery. * * *" 28 U.S.C. § 2680(h). Plaintiff's fourth ground is phrased in terms of negligence on the part of a National Guardsman, and plaintiff claims that the guardsman negligently shot him at the time and place, on the date in issue. This allegation is difficult to comprehend. Applicable case law points the direction. In Nichols v. United States, D.C., 236 F.Supp. 260, 263 (1964), this teaching appears:

> "The test is not the theory upon which the plaintiff elects to proceed or how artfully the pleadings may have been drawn. Rather, the decisive factor is whether, in substance and essence, the claim arises out of an assault and battery."

It would appear that the National Guardsman's act would, in essence, be an assault.

Yet, argues plaintiff, the Supreme Court of Michigan has recognized the possibility of a tort based on negligence in connection with the firing of a gun. In Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965), it was held that negligence was involved in an accidental discharge of a gun in a hunting accident, but that case is not applicable to the conduct of a National Guardsman quelling a riot. The court simply finds no basis for applying that principle to the facts in this case.

Rather, Ferran v. United States, 144 F.Supp. 652 (D.C.Puerto Rico 1956), seems applicable. There, deceased claimant was rowing a boat off shore from a naval installation. No warnings were given. A deputy officer on board a naval ship fired three shots, the last of which killed the deceased claimant. This was held to be an assault and battery within the exceptions. Furthermore, in Stepp v. United States, 207 F.2d 909 (4th Cir. 1953), cert. denied, 347 U.S. 933, 74 S.Ct. 627, 98 L.Ed. 1084, a civilian seaman was shot by a dock sentry upon returning to the ship. Under local law, his actions constituted assault with a dangerous weapon, not assault and battery. The court stated:

> "We think * * * that where the United States excepts itself from certain liabilities, as in Section 2680 * * * such exceptions must be interpreted under the general law rather than under some peculiar interpretations of a State." 207 F.2d 909, 911. See also *Ferran, supra,* 144 F. Supp. at 654.

■ Even if Congress had not created an exception for assault and battery, plaintiff's position would not be tenable. At common law, privilege is accorded to both private persons and official officers to use force in a riot situation. The Restatement of the Law 2d, Torts 2d, Section 142, states:

> "(2) The use of force * * * which is intended or likely to cause death or serious bodily harm for the purpose of suppressing a riot or preventing the other from participating in it is privileged if the riot is one which threatens death or serious bodily harm."

Thus, the common law recognized that some harm inflicted during a riot must remain uncompensated.

For the reason that the Government has not consented to be sued on the claim brought by plaintiff, the Government's motion to dismiss must be granted.

An appropriate order may be presented.