**In re KOREAN AIR LINES DISASTER OF SEPTEMBER 1, 1983.**

**MDL No. 565.**

**Misc. No. 83–0345.**

**Civ. A. Nos. 83–2792 to 83–2794, 83–2940, 83–2941, 83–3007, 83–CIV–3154, 83–CIV–3177, 83–3449 to 83–3453, 83–3455 and 83–3464 to 83–3466.**

United States District Court, District of Columbia.

April 18, 1984.

Juanita M. Madole, Liaison Counsel, Speiser, Krause & Madole, Washington, D.C., for plaintiff.

George N. Tompkins, Jr., Condon & Forsyth, New York City, for defendant Korean Air Lines.

Mark A. Dombroff, Torts Branch, Civ. Branch, Dept. of Justice, Washington, D.C., for defendant U.S.

John J. Martin, Bigham, Englar, Jones & Houston, New York City, for defendant Litton Industries, Inc.

Thomas J. McLaughlin, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant The Boeing Co.

Embassy of U.S.S.R., Washington, D.C., for defendant Soviet Socialist Republic.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

This matter, *In re Korean Air Lines Disaster of September 1, 1983*, comes to this Court pursuant to the November 16, 1983 transfer order of the Judicial Panel on Multidistrict Litigation. 575 F.Supp. 342. The cases involved have been brought in judicial districts around the country as the result of the deaths of 269 passengers, including plaintiffs' decedents, killed when Korean Air Lines Flight 007, en route to Kimpo Airport, Seoul, South Korea from Kennedy International Airport, New York, was shot down over the Sea of Japan by a Soviet military aircraft. Plaintiffs have named several defendants, among them, the United States government. The cases against the United States allege jurisdiction under the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*, the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.*, and the admiralty and maritime provisions of Article III, Section 2 of the Constitution of the United States.

Presently before the Court are two motions by the United States. The first motion argues for dismissal of the actions against the government for lack of jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6). The second motion urges the Court to enter summary judgment in favor of the United States as to all claims based upon the provisions of air traffic control services.

Two groups of plaintiffs, from New York and the District of Columbia, have made claims against the United States. The District of Columbia plaintiffs make three claims against the government. They contend that the government "negligently" deployed military aircraft in the vicinity of the flight path of Korean Air Lines Flight 007 (KAL 007), that the government should have utilized its alleged capabilities to warn KAL 007 and/or that the government failed to advise the flight crew of KAL 007 that it was headed for danger. Specifically, the District of Columbia plaintiffs claim:

27. On August 31, 1983, through September 1, 1983, and all times relevant hereto, the Defendant, UNITED STATES OF AMERICA, committed each and all of the negligent acts of omission or commission:

(a) in knowingly deploying its aircraft in geographical and temporal proximity to the departure and route of flight (sic) of Flight 007, thereby causing a danger and a hazard to the passengers on board the aircraft which the defendant knew or, in the exercise of reasonable care should have known, were being created inasmuch as defendant knew or should have known that the radar return from its aircraft and Flight 007 would be similarly received on USSR radar and that Flight 007 could be mistaken by the U.S. S.R. as a military aircraft and subjected to fatal defensive measures, and/or

(b) in failing to use available procedures and equipment to track the flight path of Flight 007 against its assigned flight path, thereby failing to advise the flight crew of Flight 007 of the departure of Flight 007 from its assigned course, which it knew, or in the exercise of reasonable care, the utilization of available equipment and proper conduct should have known, was occurring at the time prior to its crash into the Sea of Japan, and/or

(c) in failing to warn the flight crew of Flight 007 or Korean Air Lines officers or agents of the deviation from the assigned flight path which defendant knew, or in the exercise of reasonable care should have known, would create a danger and a hazard to the passengers of KOREAN AIR LINES, CO., LTD., Flight 007.

For these alleged wrongs connected with this air tragedy, each District of Columbia plaintiff seeks five million dollars ($5,000,000) from the government of the United States.

The New York plaintiffs make only one claim against the government. Their cause of action is based upon the alleged negligence of the United States in providing air traffic services to KAL 007. The New York plaintiffs' claim is worded as follows:

17. During said flight, defendant United States provided air traffic control services, including instructions and radar, navigation, radio communication and other assistance to the flight crew of said aircraft while it was above international waters and the territory and adjacent navigable waters of the Union of Soviet Socialist Republics.

18. Said injuries, crash, death and resulting damages were caused by the negligence of defendant United States in that it instructed said flight crew of defendant Korean Air Lines' aircraft to fly a safe course above the territory and adjacent navigable waters of Japan and international waters, but failed to warn said flight crew of the aircraft that it violated the instructions and was off course, flying toward and then over dangerous territory and adjacent navigable waters to the Soviet Union, and defendant United States was otherwise negligent while engaged in said maritime related activity.

Initially, the government's motion to dismiss argued that all of the claims made by the District of Columbia and New York plaintiffs present non-justiciable issues. However, in order to contest plaintiffs' allegations, the government wished the Court to consider evidence beyond the pleadings. Since this would automatically transform the motion to dismiss into a motion for summary judgment, the government submitted its motion for partial summary judgment as to the claims concerning the provision of air traffic control services. The Court will consider the motions in the order of submission.

### Motion to Dismiss

As the result of the motion for summary judgment as to the air traffic control services claims, the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) encompasses only the claims made by the District of Columbia plaintiffs which allege liability for "knowingly deploying its aircraft in geographical and temporal proximity to the departure and route" of KAL 007, and any claims which allege that the government failed to use "available" procedures, or equipment as opposed to claims alleging that the government failed to follow mandated procedures. Even assuming the plaintiffs allegations to be true, which the Court must do when considering motions under Fed.R. 12(b)(1) or 12(b)(6), plaintiffs claims regarding the deployment of military aircraft must be dismissed. The Court finds that these claims present political questions which the judicial branch should decline to review.

Before considering the non-justiciable nature of the claims based upon the deployment of military aircraft, the Court notes that the Suits in Admiralty Act specifies that actions may be maintained against the government if they could also be

brought against a private person or party. In determining when a claim could be considered to be uniquely governmental, the courts initially focused upon the existence of a parallel private activity. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). However, subsequent decisions have narrowed the *Feres* doctrine to the "peculiar and special relationship of the soldier to his superiors," therefore, allowing liability for activities not usually performed by private parties. *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). As a result, cases have been maintained against the government (in spite of the "uniquely governmental" nature of certain activities), for the failure to properly maintain a lighthouse in *Indian Towing Co. v. United States;* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), for negligence in fighting a forest fire in *Rayonier Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957), and for the negligence of air traffic controllers in *Eastern Air Lines v. Union Trust Co.,* 221 F.2d 62, *cert. denied United States v. Union Trust Co.,* 350 U.S. 911, 76 S.Ct. 192, 100 L.Ed. 799 (1955). Plaintiffs may therefore maintain actions against the government in spite of the governmental nature of the activities here involved.

■ However, under the doctrine formulated in the landmark decision, *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), plaintiffs may not present these claims against the government based upon the decisions of the military concerning the national security. The Supreme Court presented six (6) factors to be considered before a court may dismiss for non-justiciability on the ground of a political question's presence. The six factors were set forth as follows:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable

standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710. The Supreme Court in *Baker v. Carr* stated that one of these formulations would be sufficient for dismissal; in the cases at bar, all of these factors are present.

There is a "textually demonstrable constitutional commitment" of military matters to the coordinate branches of government. The Constitution specifically gives Congress the power to organize, arm and govern the military and provides that the President shall be the Commander-in-Chief of the armed services. Article I, Section 8 and Article II, Section 2. Moreover, decisions which affect the national security with respect to the Soviet Union involve policy considerations beyond the scope of judicial expertise. The Court may not appraise the necessity or desirability of conducting the reconnaissance activities alleged by plaintiff. Such appraisal would involve the Court in foreign policy determinations calling for non-judicial discretion. To attempt to decide such a matter without the necessary expertise and in the absence of judicially manageable standards would be to entangle the court in matters constitutionally given to the executive branch. Further, such an undertaking by the Court would certainly evince a "lack of respect due coordinate branches of government," interfere with "political decisions already made" and engender "multifarious pronouncements by various departments on one question." Separation of powers doctrine dictates that the Court not act as overseer of the executive branch in this matter. Whatever the facts and circumstances surrounding the executive decision

to conduct reconnaissance activity over the waters adjacent to the Soviet Union, the method and manner of that decision may not be inquired into by the courts. Since such a decision involves policy considerations beyond the scope of the Court's review, all claims regarding the deployment of military aircraft shall be dismissed.

To the extent that plaintiffs' claims suggest that the government possesses capabilities which it could have utilized to warn KAL 007 but chose not to utilize, the claims shall be dismissed. The failure to adopt a policy to utilize available equipment and procedures for the purposes and in the manner plaintiffs suggest is a basic policy decision. Since such alleged negligence is not based upon "imperfectly executing a federal program established either by an act of Congress or a federal regulation" it is not actionable. *Gercey v. United States*, 540 F.2d 536, 538 (1st Cir.1976).

*Motion for Summary Judgment as to all Claims Based on Duty to Warn by Virtue of the Provision of Air Traffic Control Services*

The motion for partial summary judgment concerns only the claims raised by the District of Columbia and New York plaintiffs arising out of the provision of air traffic control services. Plaintiffs allege that the United States breached a duty to warn KAL 007 that it was dangerously off-course. Plaintiffs further allege the existence of operational procedures governing the monitoring and warning of civilian aircraft. As basis for their allegations, the plaintiffs point out that the United States is a member nation of the Convention on International Civil Aviation (ICAO) and therefore follows the ICAO International Standards and Recommended Practices for air traffic services. There is also the existence of the National Search and Rescue Plan (SAR). There may exist, plaintiffs argue, additional rules and regulations governing the warning or rescue of civilian aircraft.

The government defends against the plaintiffs' allegations with the "discretionary function" exception which is implied into the Suits in Admiralty Act. The D.C. Circuit held, in *Canadian Transport Co. v. United States*, 663 F.2d 1081 (D.C.Cir. 1980), that the "discretionary function" exception to the Federal Tort Claims Act, (FTCA), 28 U.S.C. § 2680, is necessarily, and with the same scope, implied into the Suits in Admiralty Act. In the *Canadian Transport* case, the Court of Appeals states:

> We believe that respect for the doctrine of powers requires that in cases arising under the Suits in Admiralty Act, courts should refrain from passing judgment on the appropriateness of actions of the executive branch which meet the requirements of the discretionary function of the FTCA. Accordingly, we align ourselves with the views expressed in the *Gercey* case and hold that a discretionary function exemption is implicit in the Suits in Admiralty Act.

633 F.2d at 1085. Using the language of the "planning/operational" distinction found in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1963), the court further stated:

> We think however that the result in this case should not turn upon whether the Coast Guard's actions can be labelled as "planning" or "operational." Although that distinction provides a useful guideline, a proper decision can be reached only by keeping the purposes of the discretionary function exemption in mind. The exercise of judgment which the exemption protects must be one which would otherwise involve courts in making a decision entrusted to other branches of the government. Decisions which require a government official to weigh competing policy alternatives are entitled to immunity for such decisions are the ordinary responsibility of the legislative and executive branches. In the *Dalehite* opinion itself, the Court stated that "[w]here there is room for *policy judgment* and decision, there is discretion." 346 U.S. at 36, 73 S.Ct. at 968. (Emphasis added) In Mr. Justice Jackson's

words, "it is not a tort for government to govern...." *Id.* at 57, 73 S.Ct. at 978 (dissenting opinion). Conversely, if the decision involves only the implementation of policy choices already made, there is usually no reason for a court to refrain from passing judgment on the question of whether the statutory or regulatory mandate has been complied with. 663 F.2d at 1087. Finally, the Court of Appeals noted that "[a]lthough the line dividing decisions which involve a choice between competing policy considerations and those which involve the implementation of choices already made may not always be well-defined, we believe that recognition of the purposes of the discretionary function exception requires a court to attempt to draw a line." *Id.*

The task before this Court is to discover whether there was a policy choice made with respect to civilian aircraft in the position of KAL 007 and then whether or not there was negligence in the implementation of that policy. At this stage in the litigation, the Court finds that the record is insufficient for such a determination.

■■■ The Court notes that it is within the "negative discretion" of district courts to deny, but not to grant a motion for summary judgment. This rule has been stated thus: "However, even if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to *deny* the motion and permit the case to be developed fully at trial." *Roberts v. Browning,* 610 F.2d 528, 536 (8th Cir.1979). In addition to the Court's discretion with respect to the denial of summary judgment, the fact that no discovery has been had against the United States in this case mitigates against granting the motion. The plaintiffs have properly filed Fed.R.Civ.P. 56(f) affidavits in connection with their oppositions. As they correctly assert, there is not a sufficient record on which to base the grant of a motion for summary judgment. The Court simply does not have the necessary factual basis. The Court notes that a central purpose of Rule 56(f) is to ensure that diligent plaintiffs have the opportunity to pursue avenues of discovery. In such a situation as this, where all discovery materials are in the possession of the moving party, the Court must be especially cautious before entering a remedy as severe as summary judgment.

Therefore, while the Court expresses no opinion as to the likelihood that discovery will prevent the entry of summary judgment against plaintiffs, plaintiffs will be given the opportunity to prove the existence of a triable issue of material fact. At present, however, and giving the plaintiffs "the benefit of inferences favorable to [their] cause, the record in its nebulous state simply does not establish the absence of a triable issue of fact...." *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir. 1979). In short, where plaintiffs allege the existence of records supporting their claims, and the records are not subject to a valid claim of privilege, then plaintiffs will be given the opportunity to uncover those facts to support their allegations. An example of this rule is found in *Committee for Nuclear Responsibility v. Seaborg,* 463 F.2d 783 (D.C.Cir.1971), *injunction denied,* 404 U.S. 917, 92 S.Ct. 242, 30 L.Ed.2d 191 (1971) where the Court of Appeals stated "The grant of summary judgment prematurely terminated the discovery process and foreclosed plaintiffs' opportunity to substantiate their allegations.... On remand, plaintiffs' discovery—subject to the possible interposition of valid claims of privilege—should be allowed to continue."

Since the Court here finds that summary judgment in the absence of at least some discovery would be inappropriate, the Court will exercise its "negative discretion" and deny the motion on the ground that plaintiffs have not yet had time to take discovery. The Court therefore denies the motion on procedural ground and not on the merits; discovery against the government will be allowed to proceed, but only with respect to uncovering the existence of a legal duty to warn or advise civilian air-

craft in the position of KAL 007 on August 31, 1983 and September 1, 1983.